IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ANITA GORMAN,

             Plaintiff,

vs.                                     Case No. 15-1236-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

             Defendant.


MEMORANDUM AND ORDER

       This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

**I.  General legal standards**

       The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On January 27, 2014, administrative law judge (ALJ) Michael Comisky issued his decision (R. at 14-22). Plaintiff alleges that she had been disabled since December 31, 2010 (R. at 14). Plaintiff meets the insured status requirements for social security disability benefits through March 31, 2016 (R. at 16).

At step one, the ALJ found that plaintiff has engaged in substantial gainful activity through March 31, 2016 (R. at 16). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 17). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17). After determining plaintiff's RFC (R. at 17), the ALJ found at step four that plaintiff could perform past relevant work (R. at 20). In the alternative, at step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 20-22). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22).

**III. Was plaintiff engaged in substantial gainful activity (SGA) from December 31, 2010, the alleged onset date, to January 27, 2014, the date of the decision?**

On October 28, 2013, plaintiff testified that she has been babysitting her grandson since April 2011, when he was 4 months old (R. at 41). She watches him 10-12 hours a day while her children work (R. at 41). The only remuneration she receives for babysitting is payment of $575 a month for health insurance (R. at 41). The ALJ acknowledges that her earnings are under the presumptive substantial gainful activity amount set forth in Social Security regulation 20 C.F.R. § 404.1574. The presumptive substantial gainful activity amount in 2011 was

$1,000 a month; in 2012 it was $1,1010 a month, in 2013 it was $1,040 a month; in 2014 it was $1,070 a month.[1]

The ALJ went on to state that if plaintiff's work is considered under 20 C.F.R. § 404.1575 (evaluation guides if you are self-employed), her work would likely be considered substantial gainful activity, since, according to the ALJ, these regulations are more concerned with the nature and duration of work rather than actual income, and plaintiff is working full time performing work requiring significant physical and mental activity and doing so successfully without any special accommodation (R. at 16).

Later in his decision, the ALJ found that plaintiff's work as a babysitter was past relevant work.  He noted that plaintiff acknowledged at the hearing working three years for 10-12 hours per day as a babysitter, which would equal at least 50 hours a week.  Although this is work usually done for pay or profit, plaintiff was only receiving a monthly payment of $575 for health insurance.  The ALJ went on to say that if plaintiff had received traditional payment for this work, even at minimum wage, her monthly earnings would have been about $1400, well in excess of substantial gainful activity minimums, and thus sufficient to establish this as past relevant work (R. at 21).

---

[1] https://www.ssa.gov/oact/cola/sga.html (Aug. 24, 2016).

If plaintiff is engaged in substantial gainful activity, then plaintiff is not disabled.  20 C.F.R. § 404.1520.  Despite this finding by the ALJ, the ALJ stated that since her earnings as reported are under SGA levels, the ALJ elected to proceed with the disability evaluation through the entire five-step sequential evaluation process (R. at 16).

If plaintiff's earnings are below presumptive SGA levels, then the ALJ should consider tests two and three in order to determine if plaintiff is performing SGA.  Those tests are set out in 20 C.F.R. § 404.1575(a)(2)(i-iii) and in SSR 83-34, 1983 WL 31256 at *2, 9-10.  Tests 2 and 3 are as follows:

> Test 2:  The individual's work activity, in terms of all relevant factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in the same community engaged in the same or similar businesses as their means of livelihood; or

> Test 3:  The individual's work activity, although not comparable to that of unimpaired individuals as indicated above, is, nevertheless, clearly worth more than the amount shown for the particular calendar year in the SGA Earnings Guidelines when considered in terms of its value to the business, or when compared to the salary an owner would pay to an employee for such duties in that business setting.

SSR 83-34, 1983 WL 31256 at *9.  The regulation goes on to state the following:

> When the impaired individual operates a business at a level comparable to that of

unimpaired individuals in the community who
make their livelihood from the same or
similar kind of business, there can be a
finding of SGA by the impaired person. To
establish comparability of work activity, it
is necessary to show that the disabled
person is performing at a level comparable
to that of unimpaired persons, considering
the following factors: hours, skills, energy
output, efficiency, duties and
responsibilities. The lack of conclusive
evidence as to the comparability of the
required factors will result in a finding
that work performed is not SGA.

An important part of the comparison is the
selection of the group of unimpaired
persons. The type of self-employment must be
the same. In addition, the unimpaired
persons must maintain on the basis of their
activity a standard of living regarded as
adequate for a particular community. Well-
established businesses are generally the
most reasonable choice for comparison.
Development must be specific. Each work
factor cited above must be described in
detail, showing its contribution to the
business operation. General descriptions are
considered inconclusive evidence for the
point-by-point comparison that is required.
If only a general description is possible or
available, any doubt as to the comparability
of the factors should be resolved in favor
of the impaired individual. Evidence of the
impaired individual's activities accompanied
by a statement that the work is comparable
to the work of unimpaired persons is
insufficient for a sound decision. If
necessary, a description should be obtained
through a personal interview with an
unimpaired self-employed individual from the
selected group. It may be necessary to have
a more comprehensive description of the
impaired individual's activity than that
which can be provided by the impaired
person. Contact, therefore, should be made
with people having firsthand knowledge of

> the impaired individual's work situation
> obtained through actual participation or
> observation.
>
> With respect to tests two and three, the
> degree to which evidence of comparability or
> worth of services should contain data
> supplied by outside authorities (e.g.,
> county agents, etc.) will depend on the
> factual situation. In many instances,
> familiarity with local conditions will make
> it unnecessary to document the file in great
> detail. For example, it may be evident in a
> poor farming area that management services
> on a small farm yielding a less-than-
> subsistence income would not be comparable
> to the full range of physical and mental
> activities performed by an able-bodied farm
> operator, nor would the services be clearly
> worth more than the amount shown for the
> particular calendar year in the SGA Earnings
> Guidelines. **On the other hand, where there
> is any doubt as to the comparability or
> worth of services, it will be necessary to
> obtain evidence in appropriate detail,
> supplemented as required by opinions from
> authoritative sources in the community.**

SSR 83-34, 1983 WL 31256 at *9-10 (emphasis added).

The ALJ did not expressly address either test two or test three in his decision.  Defendant argues that the 3rd test applies in this case (Doc. 16 at 4).  The ALJ made no finding that the work performed by the plaintiff was comparable to that of an unimpaired in the same community engaged in babysitting; thus, the ALJ did not meet the step two test under the regulation.  Furthermore, defendant does not argue that the step two test was applicable in this case.

The step three test requires a showing that plaintiff's work activity was clearly worth more than the presumptive SGA level ($1,000-$1,070 a month). The SGA only indicated that had plaintiff received "traditional" payment for this work, even at minimum wage, her monthly earnings would have exceeded the presumptive SGA level. However, the test requires a showing that plaintiff's work activity was "clearly worth more" than the presumptive SGA level. It is not clear from the record what is the worth of plaintiff's work activity.[2] The court finds that the ALJ failed to provide any evidence that plaintiff's work activity was clearly worth more than the presumptive SGA level.[3] There is no evidence that plaintiff's work activity was worth the minimum wage or any amount above the presumptive SGA level. When there is any doubt as to the worth of services, it will be necessary to obtain evidence in appropriate detail, supplemented as required by opinions from authoritative sources in the community. Therefore, the court finds that the evidence does not establish that plaintiff was engaged in substantial gainful activity (SGA).

---

[2] The court would note that the ALJ, although referencing the minimum wage, did not address whether plaintiff's child would be required to pay the minimum wage to their parent for babysitting the grandson.

[3] Defendant cited to Durham v. Astrue, 2012 WL 3879534 (W.D. La. July 31, 2012), aff'd, 2012 WL 3879274 (W.D. La. Sept. 5, 2012) to support their argument. However, in Durham, the ALJ, for test three, relied on testimony from Bankruptcy Judge Callaway, who testified regarding the claimant's job skills, and another witness who testified regarding claimant's job performance. The ALJ also noted claimant's testimony regarding his job performance. Claimant's contribution to the business was described as essential and invaluable. Finally, the court noted that in some years, claimant's earnings were in excess of presumptive SGA levels. 2012 WL 3879534 at *5. Thus, in Durham, there was clear evidence regarding the worth of claimant's services. Such evidence is not present in this case.

**IV.  Did the ALJ err in the relative weight assigned to the
medical sources in making his RFC findings?**

The opinions of physicians, psychologists, or psychiatrists
who have seen a claimant over a period of time for purposes of
treatment are given more weight than the views of consulting
physicians or those who only review the medical records and
never examine the claimant.  The opinion of an examining
physician is generally entitled to less weight than that of a
treating physician, and the opinion of an agency physician who
has never seen the claimant is entitled to the least weight of
all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).
When a treating source opinion is inconsistent with the other
medical evidence, the ALJ's task is to examine the other medical
source's reports to see if they outweigh the treating source's
reports, not the other way around.  Treating source opinions are
given particular weight because of their unique perspective to
the medical evidence that cannot be obtained from the objective
medical findings alone or from reports of individual
examinations, such as consultative examinations.  If an ALJ
intends to rely on a nontreating physician or examiner's
opinion, he must explain the weight he is giving to it.  Hamlin
v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must
provide a legally sufficient explanation for rejecting the

opinion of treating medical sources in favor of non-examining or consulting medical sources.  <u>Robinson</u>, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. <u>Watkins</u>, 350 F.3d at 1301.

On August 27, 2013, Dr. Jackson provided a medical source statement-physical, limiting plaintiff to lifting/carrying 10 pounds, sit for 5 hours at a time and for 8 hours a day, stand/walk for 1 hour at a time and for 8 hours a day, limiting him to only occasional postural and manipulative exertions, and requiring him to avoid moderate exposure to environmental factors (R. at 990-991).  The ALJ considered him a treating physician, and accorded "some" weight to his opinion that plaintiff is limited to a 10 pound weight limit, and his opinions regarding plaintiff's ability to sit, stand and walk as this appeared reasonable in light of plaintiff's cardiac history.[4]  However, the ALJ increased the lift and carry limitation to 20 pounds occasionally in light of her work as a caregiver to her grandson (R. at 20).

The record also contains two state agency assessments by non-examining physicians.  May 22, 2012, Dr. Eades indicated that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; and that plaintiff was limited in her

---

[4] The ALJ mistakenly referred to Dr. Jay Jackson as Dr. Jay Hackman in his decision (R. at 20).

overhead reaching, but had no limitation in handling, fingering and feeling (R. at 64-66).  On October 25, 2012, Dr. Raju made similar findings (R. at 78-81).  The ALJ accorded significant weight to their opinions, noting the medical evidence and plaintiff's work as a caregiver (R. at 20).

It should be noted that the ALJ considered Dr. Jackson a treating physician (R. at 20).  Dr. Jackson examined plaintiff in March 2013 and performed a heart catheterization on plaintiff on March 23, 2013 (R. at 907-912).

The ALJ accorded some weight to his opinions, but failed to specifically discuss the opinions of Dr. Jackson that plaintiff could only occasionally reach, handle, finger and feel (R. at 991).  Dr. Eades and Dr. Raju only limited plaintiff in overhead reaching, with no limitations in handling, fingering and feeling (R. at 65, 79).  The ALJ accorded significant weight to their opinions, and in his RFC findings, stated that plaintiff was capable of frequent overhead reaching, and should avoid rapid, repetitive use of the hands (R. at 17, 52).  Plaintiff argues that the manipulative limitations set forth by Dr. Jackson would eliminate past relevant and other jobs identified that plaintiff could perform (Doc. 11 at 15-16).

In the case of Smith v. Colvin, 821 F.3d 1264, 1268 (10th Cir. 2016), the ALJ had two conflicting medical opinions on fingering, handling, and feeling.  Faced with the conflicting

opinions, the ALJ adopted a middle ground.  In this manner, the
ALJ arrived at an assessment between the two medical opinions
without fully embracing either one.  The court in <u>Smith</u>
indicated that this approach had been upheld in <u>Chapo v. Astrue</u>,
682 F.3d 1285, 1288 (10th Cir. 2012).[5]

     As was the case in <u>Smith</u>, the ALJ in this case, faced with
conflicting medical opinions, adopted a middle ground, arriving
at an assessment on manipulative limitations between the
conflicting medical opinions.  Furthermore, <u>Smith</u> did not
require the ALJ to provide a narrative explanation for adopting
a middle ground between conflicting medical opinions.  In light
of the close parallel to the facts in <u>Smith</u>, the court finds no
error by the ALJ in resolving the conflicting medical opinions
regarding plaintiff's manipulative limitations.

     Insofar as the ALJ generally gave greater weight to the
opinions of Dr. Eades and Dr. Raju, the court will not reweigh
the evidence or substitute its judgment for that of the
Commissioner.  <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th
Cir. 2005); <u>White v. Barnhart</u>, 287 F.3d 903, 905, 908, 909 (10th
Cir. 2002).  Although the court will not reweigh the evidence,

---

[5] In <u>Chapo v. Astrue</u>, 682 F.3d 1285, 1288 (10th Cir. 2012), court held that the ALJ did not split the difference between the two medical opinions.  The court stated that the ALJ did not triangulate from the two opinions, but flatly rejected one of the medical opinions.  The ALJ did accord weight to the other medical opinion, and then tempered it in claimant's favor.  The court held that if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.  Although the language of <u>Chapo</u> does not appear to embrace splitting the difference between two medical opinions, the court in <u>Smith</u> found that <u>Chapo</u> upheld the approach of adopting a middle ground between two medical opinions.  This court is bound by the holding in <u>Smith</u> and its interpretation of <u>Chapo</u>.

the conclusions reached by the ALJ must be reasonable and consistent with the evidence.   See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).   The court can only review the sufficiency of the evidence.   Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

     For the reasons set forth above, the court finds no clear error in the relative weight that the ALJ accorded to the medical opinions.   The court therefore concludes that substantial evidence supports the ALJ's RFC findings, and his conclusion that plaintiff can perform past relevant work and other work that exists in substantial numbers in the national economy, and is therefore not disabled.

     IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 2nd day of September 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge